UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FOX BROADCASTING CO. and<br>FOX NETWORKS GROUP, INC.,<br><br>       Plaintiffs,<br><br>  vs.<br><br>PERSONAL AUDIO LLC,<br><br>       Defendant | Civ. A. No. 1:13-cv-11794-MLW |

**OPPOSITION OF PLAINTIFFS FOX BROADCASTING CO. AND FOX NETWORKS
GROUP, INC. TO DEFENDANT PERSONAL AUDIO, LLC'S MOTION TO DISMISS
<u>FOR LACK OF PERSONAL JURISDICTION</u>**

Plaintiffs, Fox Broadcasting Company and Fox Networks Group, Inc. (collectively

"Fox") submit this opposition to Defendant Personal Audio, LLC's motion to dismiss for lack of

personal jurisdiction.

**INTRODUCTION AND SUMMARY OF POSITION**

Defendant Personal Audio, LLC ("Personal Audio") has a long history of continuous and

systematic contacts with Massachusetts up through and after the filing of this action.  Because

Personal Audio conducts its business to a large extent in Massachusetts, and has numerous other

contacts with Massachusetts, Personal Audio is subject to the general jurisdiction of this Court.

*See Helicopteros Nacionales De Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984) (general

jurisdiction exists when defendant has continuous and systematic general business contacts with

the forum state).

In seeking to avoid the jurisdiction of this Court (and force Fox to litigate in the Eastern District of Texas, which is a preferred forum for non-practicing entities seeking to enforce patents), Personal Audio presents a misleading picture of where Personal Audio conducts its business activities by misrepresenting some facts and omitting others.

First, Personal Audio states in support of its motion that it has "no employees" in Massachusetts, *see* Mem. at 2 (D.I. 21), and that, although Richard Baker is located in Massachusetts, he is only one of Personal Audio's "licensing contractors."  Mem. at 4.  In fact, Personal Audio issued a press release on September 12, 2013 -- the day before the pending motion was filed -- describing Mr. Baker as "Personal Audio's Vice President of Licensing." Davis Decl., Ex. A (emphasis added).  The Vice President of Licensing is a critical position for a non-practicing entity like Personal Audio, which has the licensing of patents as its only business and revenue source.  Over the last few years, Mr. Baker is described as Personal Audio's Vice-President of Licensing or chief of licensing when he represents Personal Audio in numerous media interviews, when he is quoted in and identified as a contact person in Personal Audio's press releases, and when he contacts numerous potential licensees on Personal Audio's behalf. *Id*. at Exs. A-E, K-M, U.  Throughout that period, Mr. Baker's work address has been in Massachusetts.  *See id*. at Ex. G.  Personal Audio's own documents establish that Mr. Baker has conducted extensive business on behalf of Personal Audio in Massachusetts for years, including business directly related to the enforcement of the Personal Audio patents.

Second, Personal Audio dismisses the role of inventor James Logan in conducting Personal Audio's business by stating that the Complaint refers only to "the location of inventors who do not currently serve as officers of Personal Audio."  Mem. at 4.  Personal Audio fails to inform this Court that Mr. Logan is actively involved in conducting Personal Audio's business.

Mr. Logan has repeatedly served as Personal Audio's spokesperson in its publicity campaign in support of its licensing program for the patent-in-suit. *See* Davis Decl., Exs. F, H, I, L, and M. Personal Audio has admitted in one of its ongoing litigations that Mr. Logan was directly involved in licensing negotiations on behalf of Personal Audio as recently as Spring/Summer of 2013. *Id*. at Ex. R, p. 3. Thus, whether or not Mr. Logan is currently an officer of Personal Audio,[1] his activities and contacts with Massachusetts on Personal Audio's behalf as plead in the Complaint are relevant to the jurisdictional analysis.

Third, Mr. Liddle states in his declaration that Personal Audio LLC's "principal place of business" is 3827 Phelan Blvd. Suite 180, Beaumont, TX 77707. Liddle Decl. at ¶ 5 (D.I. 22). This supposed "principal place of business" is simply a rented mailbox. *See* Skaggs Decl. at ¶¶ 3-4, Exs. A-C (D.I. 12). Specifically, as plead in the Complaint and not disputed by Personal Audio, this address is a branch of PostNet International Franchise Corporation, store number TX 154, which provides mail drop services for Personal Audio and hundreds of other companies and individuals. Complaint at ¶ 8 (D.I. 1); Skaggs Decl. at ¶¶ 3-4. Personal Audio has never had an employee who worked in the rented mailbox, and does not allege otherwise. It obviously also has no documents in the rented mailbox. Personal Audio has had no real office and no employees in Texas at all until April 2013 when, according to Mr. Liddle's online profile, he joined Personal Audio. Davis Decl., Ex. P. Personal Audio cannot fairly call a rented mailbox in Beaumont, Texas its "principal place of business," and the fact is that for years the business of Personal Audio has been conducted by Mr. Baker and Mr. Logan in Massachusetts.

---

[1] Personal Audio fails to explain Mr. Logan's status within Personal Audio and whether he is still a member of Personal Audio LLC. To the extent he has changed his status within Personal Audio in an effort to avoid jurisdiction or venue in this Court, such changes should be disregarded in the jurisdictional analysis. *See Hertz Corp. v. Friend,* 559 U.S. 77, 97 (2010).

Fourth, Personal Audio states in its motion and Mr. Liddle's Declaration that it has never had a telephone line in Massachusetts and potential licensees "are directed to contact Personal Audio's Texas phone numbers."  Liddle Decl. at ¶¶ 8, 9.  Of course, calls to that "Texas" phone number would have reached Mr. Baker in Massachusetts, not anyone located in Texas.  *See* Davis Decl., Exs. B-E.  The use of a telephone number with a Texas area code as the method to contact Mr. Baker in Massachusetts is simply another effort of Personal Audio to disguise its contacts with Massachusetts.

Fifth, Personal Audio cites the current location of certain documents in Texas as support for treating Texas as its home.  Liddle Decl. at ¶ 6.  Mr. Liddle's description of the current locations (and intended future locations) of Personal Audio's documents directly contradicts Personal Audio's disclosures made in the Eastern District of Texas just one month ago (and after this action was filed.)  In its disclosures required by the Local Patent Rules for that Court, Personal Audio stated on August 28, 2013, that it "does not have possession, custody or control of any responsive documents" relating to the '504 patent and that any documents are in the possession of its outside counsel in New York City.  *See* Davis Decl., Ex. S at 9-10.  Thus, the only way that Personal Audio's statement is true is if Personal Audio has moved documents to Texas after this case was filed in yet another effort to alter facts relating to jurisdiction and venue.

The evidence establishes that Personal Audio has had "continuous and systematic" contacts with Massachusetts in the conduct of its business that are more than sufficient to bring Personal Audio within this Court's general jurisdiction.  Indeed, Personal Audio has conducted more of its business in Massachusetts than in any other forum.  As a result, this Court can deny Personal Audio's motion without analyzing whether specific jurisdiction exists.  However, if this

Court does address specific jurisdiction, the evidence shows that Personal Audio's actions in Massachusetts relating to this action support a finding of specific jurisdiction as well.  The Federal Circuit has made it plain that evaluating whether the facts of a particular cause of action are sufficiently related to actions taken by the defendant in the forum state to support specific jurisdiction requires looking at all of the defendants' actions relating to patent enforcement taking place in the forum state.  *See*, *e.g., Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1334-335 (Fed. Cir. 2008) (collecting cases finding jurisdiction over patentee based on activities in the forum state other than merely sending letters into forum).  Here, Personal Audio's actions in Massachusetts relating to its efforts to license its patents, including both issuing press releases concerning its actions against other television broadcast networks and sending enforcement letters from Massachusetts against those networks and other alleged infringers, directly relate to Fox's declaratory judgment action.  Because of these activities conducted in Massachusetts, Personal Audio is also subject to specific jurisdiction in this action.

## SUMMARY OF RELEVANT FACTS

Personal Audio, Inc., the predecessor to Personal Audio, LLC, was founded by Mr. Logan in 1996 in Methuen, Massachusetts.  Davis Decl., Ex. N.  As described in the Complaint and not controverted in Personal Audio's motion, Mr. Logan has been active in conducting numerous businesses in Massachusetts, including Personal Audio.  Complaint at ¶¶ 13-16. Personal Audio's founders filed several patent applications, including the application that led to the issuance of the '504 patent.  *See, e.g.,* Davis Decl., Exs. Q, S.  In a 2009 filing with the United States Patent and Trademark Office, the inventors represented that one of the three co-inventors was living in Cambridge, Massachusetts and the assignee of the patent application was the James D. Logan and Kerry M. Logan Family Trust, 40 Greenwood Drive, Monreo, Massachusetts.  Davis Decl., Ex. Q.  The Logan Family Trust assigned the '504 patent to

Personal Audio LLC in 2009, but remains a member of Personal Audio LLC.  *See* Davis Decl.,

Ex. T.  Personal Audio LLC was founded by inventors Logan and Call in 2009 and at least as of

January 2013, inventor Call was still identified as a member of Personal Audio LLC.  *See* Davis

Decl., Exs. D, T.

Online searches identify Mr. Logan as a principal member of Personal Audio LLC, along

with trusts that are controlled by Mr. Logan.  Davis Decl., Ex. T.  Personal Audio's website is

also registered to Mr. Logan.  *See* Davis Decl., Ex. O.  He has been actively involved in Personal

Audio's business and has served as the principal spokesperson for Personal Audio in numerous

media appearances.  *Id*. at Exs. F, H, I, L, and M.  In a June 2013 interview, Mr. Logan explained

Personal Audio's business as follows:

> Personal Audio, LLC is a holding company.  That is, we own property and our
> main activities relate to earning a return on that property.  Now, it just so happens
> that our property consists of patents –not real estate, artwork, or copyrights—and
> that has apparently put us on the wrong side of the patent debate in the eyes of
> some people. . .

*Id*. at Ex. I, 1-2.

Part of Personal Audio's business strategy is to publicize its patents and licensing

program extensively.  Personal Audio operates a website (personalaudio.net) that is targeted to

potential licensees and includes information about Personal Audio's licensing program, the

patents, and links to Personal Audio press releases and press coverage.  Personal Audio also

directs readers of its press releases to its website for additional information.  *See, e.g.,* Davis

Decl., Ex. A.  In addition to issuing press releases itself, Personal Audio has given multiple

interviews related to its business.  Those publicity efforts have both emanated from and been

directed to Massachusetts.  For example, Richard Baker and Brad Liddle participated in a

podcast at Lawyer2Lawyer, a Massachusetts-based podcaster on June 21, 2013.  *Id*, Ex. U.  In

June 2013, Mr. Logan attended the IP Business Congress in Boston and gave an interview to

Intellectual Asset Management magazine concerning Personal Audio's patent licensing activities.  *Id.*, Ex. H.  He told that magazine that as of then "over 75 letters have been sent out to potential infringers."  *Id.* This interview included a specific enforcement threat by Mr. Logan against broadcasting companies like Fox:  the '504 patent "has allowed Personal Audio to target the podcasters, as well as broadcast companies such as CBS, NBC and the Discovery Channel."  *Id.*

According to the press releases and articles posted on Personal Audio's own website, Richard Baker has been, and continues to be, Personal Audio's Vice-President of Licensing. Davis Decl., Ex. A.  Mr. Baker has lived and worked in Massachusetts throughout the relevant time period.  *Id.,* Ex. G.  In a September 12, 2013, Personal Audio press release, Mr. Baker is specifically quoted as saying that Personal Audio is "actively engaged in licensing its patent portfolio to other companies."  *Id.*, Ex. A.  In a pleading in a pending litigation, Personal Audio admitted that the contact from Personal Audio to alleged infringer Fuhu included "a February 5, 2013 letter to Fuhu *from Personal Audio's Vice President of Licensing Richard Baker* offering a license to Fuhu for the Patents-in-Suit."  *Id.*, Ex. R at 3 (emphasis added).  This initial contact was followed by negotiations in which Mr. Liddle, Mr. Baker, and Mr. Logan were negotiating this license on Personal Audio's behalf.  As Personal Audio explains, "Mr. Liddle was in Texas, Mr. Baker was in Massachusetts or New Hampshire, and Mr. Logan was in New Hampshire during these negotiations." *Id.*

At least up until very recently, Personal Audio had no employees located in Texas at all. According to his Linked In profile, *see* Davis Decl., Ex. P, Mr. Liddle was hired by Personal Audio in April 2013.  Although Mr. Liddle does not indicate in his Declaration when Personal Audio hired Ms. Sullivan, who is identified as being Personal Audio's other "current" employee,

Liddle Decl. at ¶ 4,  he submitted a declaration in another litigation a mere nine days before this case was filed, in which he claimed to be Personal Audio's <u>only</u> permanent employee.  Davis Decl., Ex. V at ¶ 3.  Ms. Sullivan, who is purportedly Personal Audio's "corporate secretary and marketing coordinator," appears for the first time in any Personal Audio materials on September 12, 2013.  Thus Ms. Sullivan was hired after this lawsuit was filed – likely for the purpose of attempting to create some "presence" in the Eastern District of Texas, a jurisdiction popular among non-practicing entities seeking to enforce patents.

In Mr. Liddle's declaration, he states that the documents relevant to the enforcement of its patents are "located in a storage location in Beaumont, TX."  Liddle Decl. at ¶ 6.  However, Personal Audio represented in its disclosures in the Texas litigation served on August 28, 2013 that it has <u>no</u> relevant documents in its possession and that any documents are in the possession of its outside counsel in New York City.  Davis Decl., Ex. S at 9-10.

Although the telephone number that Personal Audio uses is nominally a "Texas" number based on its area code, there is no dispute that this phone number was used for contacting Mr. Baker <u>in Massachusetts</u>.  *See* Davis Decl., Exs. B-E.  There is no evidence and no suggestion by Personal Audio that Mr. Baker was in Texas rather than Massachusetts when he received phone calls at that number.

## ARGUMENT

### I.    Applicable Legal Standards

In patent cases, the issue of whether there is personal jurisdiction is governed by the law of the Federal Circuit, not the law of the regional circuit. *Red Wing Shoe Co., v. Hockerson-Kalbewstadt, Inc.* 148 F.3d 1355, 1358 (Fed. Cir. 1998).  Because Personal Audio raises this jurisdictional issue in a motion to dismiss, Fox need only make a "prima facie showing" that Personal Audio is subject to personal jurisdiction.  *See Avocent*, 552 F.3d at 1328-1329 (quoting

*Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003)).   In conducting its

analysis, this Court must accept the uncontroverted allegations in the Plaintiff's complaint as true

and resolve any factual conflicts in the affidavits in the plaintiff's favor. *Id.*  For that reason,

where "the plaintiff's factual allegations are not directly controverted, they are taken as true for

purposes of determining jurisdiction."  *Nuance Communications, Inc. v. Abbyy Software House,*

626 F.3d 1222, 1231 (Fed. Cir. 2010) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed.

Cir. 1995)).

Personal jurisdiction can be established by showing that the forum has *either* general

jurisdiction *or* specific jurisdiction over the defendant.  If Personal Audio is subject to general

jurisdiction in Massachusetts, this Court has jurisdiction, even if this action were completely

unrelated to Personal Audio's activities in Massachusetts.  *See Goodyear Dunlop Tires*

*Operations v. Brown*, 131 S.Ct. 2846, 2849 (2011) (general jurisdiction allows for jurisdiction

over causes of action arising from dealings entirely distinct from the activities that establish

general jurisdiction) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (2011)).  The

question for determining whether an entity is subject to general jurisdiction in the forum is

whether the entity has had "continuous and systemic contacts" with the forum.  *See id.* at 2851*;*

*Helicopteros,* 446 U.S. at 415-16.  Although the defendant's place of incorporation and principal

place of business are paradigmatic examples of general jurisdiction for a corporation, general

jurisdiction is not so limited.  *See Goodyear*, 131 S.Ct. at 2853-854.

If the Court does not have general jurisdiction over a defendant, the analysis then shifts to

whether or not there is specific jurisdiction over that defendant for purposes of that particular

action.  "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's

long-arm statute permits the assertion of jurisdiction without violating federal due process." *3D*

*Systems, Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998).  The language of the Massachusetts long-arm statute "is expansive, and its words are to be generously applied." *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995).  Under that statute, the claims underlying the litigation "must directly arise out of, or relate to, the defendants' forum-state activities."  *Id*. at 144.  The "arise out of  or related to" requirement "is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure 'arise out of' standard."  *Avocent*, 552 F.3d at 1330.  In particular, "[b]ecause declaratory judgment actions raise non-infringement, invalidity and/or enforceability issues central to enforcement of the patents in question, [the Federal Circuit has] looked beyond the 'arises out of' inquiry and have found jurisdiction where a defendants' 'other activities' in some identifiable way 'related to' enforcement of those patents in the forum."  *Id.* at 1334 (citing *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F. 3d 1356, 1363-367 (Fed. Cir. 2006)).

        In examining facts relating to jurisdictional issues, the Court should look at the practical realities of how and where the defendant has actually conducted its business. "[I]f the record reveals attempts at manipulation – for example, that the alleged, 'nerve center' is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat – the court should instead take as the 'nerve center' the place of actual direction, control, and coordination, in the absence of such manipulation." *Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010) (addressing issue of manipulation of jurisdictional facts in the context of diversity jurisdiction).  Here Personal Audio's Texas nerve center is a mailbox and a phone number that redirects to Massachusetts.

## II.    Personal Audio is Subject to General Jurisdiction in Massachusetts

        Personal Audio is properly subject to the general jurisdiction of this Court because it has had continuous and systematic contacts with Massachusetts.  *See Avocent*, 552 F.3d at 1331-332

(in patent infringement cases, an assertion of general jurisdiction "requires that the defendant have continuous and systematic contacts with the forum state").   Such activities "will confer jurisdiction even when the cause of action has no relationship with those contacts."  *Id.* (quoting *Silent Drive Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003)).  A company has such continuous and systematic contacts with a forum when as a practical matter it is operating its business in significant part in that forum.  For example, in a seminal case on general jurisdiction, the Supreme Court found general jurisdiction in Ohio over a Philippine-based mining company based on the fact that during wartime it had conducted its limited business activities from Ohio, even though all of its mining operations were in the Philippines.  *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 447-448 (1952).  The Supreme Court most recently in *Goodyear* affirmed the teachings of *Perkins* and held again that if a company conducts its business in a forum on a regular basis it is subject to general jurisdiction.[2] 131 S.Ct. at 2856.

Mr. Baker has been involved in ongoing business activities on behalf of Personal Audio in Massachusetts for years.  On Personal Audio's own website, there are five press releases issued in 2012-13 alone that quote Mr. Baker speaking on behalf of Personal Audio with respect to its licensing program and four that identify Mr. Baker as the contact person for the press release.  *See* Davis Decl., Exs. A-E.  Personal Audio cannot dispute that Mr. Baker has been involved in multiple contacts with potential licensees from his office in Massachusetts.  Mr.

---

[2] Personal Audio suggests inaccurately that *Goodyear* holds that a company is generally subject to general jurisdiction <u>only</u> in its place of incorporation and principal place of business.  *See* Mem. at 3.   *Goodyear* contains no such holding and that is not the law.  *See, e.g., Perkins,* 342 U.S. at 447-448; *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).   *Goodyear* does not refer to a "principal place of business" as being determinative.  Indeed, if determining the principal place of business, as it is in diversity jurisdiction, were the standard the *Goodyear* case would have been much easier and the analysis quite different.  *Goodyear* states that the defendant in that case "was in no sense at home in North Carolina" but that was based on the fact that the defendant had <u>no</u> link to North Carolina other than the fact that it had placed tires into the stream of commerce that ultimately were sold in North Carolina.

Baker sent letters to all the parties that Personal Audio has sued in the currently pending actions

to enforce the '504 patent, including to NBC and CBS.  *See* Davis Decl., Exs. W, X.  Moreover,

Mr. Baker has sent out many other such letters to alleged infringers of the '504 patent including

several companies that have not been sued by Personal Audio.  *See* Davis Decl. at ¶ 26.  In

addition to those press releases and direct contacts with licensees, Mr. Baker has made multiple

public appearances and given multiple interviews on behalf of Personal Audio directly relating to

its efforts to license the asserted Personal Audio patents.  *See* Davis Decl., Exs. A-E, K-M, U.

At least up until April 2013, when Mr. Liddle joined Personal Audio, Mr. Baker was the

primary, if not sole, person engaged in operating Personal Audio's licensing business.  There is

no dispute that Mr. Baker performed this work in Massachusetts.  Mr. Baker's work for Personal

Audio in Massachusetts alone establishes that Personal Audio has continuous and systematic

contacts with Massachusetts sufficient for this Court to assert general jurisdiction over Personal

Audio in this action.  *See, e.g., Perkins*, 343 U.S. at 447-49*; LSI Indus.*, 232 F.3d at 1375

(finding general jurisdiction in Ohio over Connecticut defendant with principal place of business

in Virginia due to its continuous and systematic contacts with Ohio, including millions of dollars

of sales in lighting products in Ohio and a broad distributorship network in Ohio)*.*

But Fox need not rely on Mr. Baker's activities alone to establish jurisdiction because

Personal Audio has had other connections to Massachusetts as well.  James Logan, one of the

inventors and the founder of Personal Audio, has also conducted business on behalf of Personal

Audio in Massachusetts.  *See* Complaint at ¶ 12.  Mr. Logan has given numerous interviews and

appeared on radio shows on behalf of Personal Audio in Massachusetts.  Davis Decl., Exs. F, H,

I, L, and M.  Personal Audio also relies extensively on the history of Personal Audio, Inc.

(identified as the predecessor to Personal Audio LLC) and Mr. Logan's efforts in Massachusetts

to commercialize the Personal Audio patents in promoting its licensing efforts.  *See* Davis Decl., Exs. A-E.

 This case is entirely different than those cases cited by Personal Audio, *see* Mem. at 3,  in which plaintiffs sought to establish general jurisdiction over a corporate entity based on an occasional attenuated action that touched upon the forum state.  In none of those cases was the primary business of the company being conducted in the forum.  In none of those cases was an officer of the company conducting business on the company's behalf permanently located in the forum state.  Here, the record is clear that Personal Audio has been for years conducting most of its business out of Massachusetts and has a long and involved history in Massachusetts.  Indeed, it would be fair to say that Massachusetts served as Personal Audio's <u>actual</u> principal place of business (not the mailbox down in Texas) when this lawsuit was filed.

 Personal Audio cannot escape the jurisdiction of this Court by now pretending otherwise and trying to belatedly turn itself into a purely Texas company.  As an initial matter, a corporate entity can be subject to general jurisdiction in more than one forum, so increasing Personal Audio's connections to Texas does not diminish its contacts with Massachusetts.[3] *See, e.g., LSI Indus.*, 232 F.3d at 1370; *see also Goodyear*, 131 S.Ct. at 2853-854 (identifying domicile, place of incorporation, and principal place of business as example bases for the exercise of general jurisdiction).  In any event, Personal Audio in this motion, as well as in response to Fox's motion to enjoin, continues its pattern of overstating its alleged "home" in Texas.  As the Federal Circuit held in connection with a mandamus petition on a motion to transfer:  "the status of Personal Audio, LLC, as a Texas corporation is not entitled to significant weight, inasmuch as the

---

[3] Personal Audio's description of its future plans for offices in Texas and moving documents to new locations are irrelevant to the jurisdictional issues raised by its motion. *See, e.g., United States v. Scophony*, 333 U.S. 795, 810 (1948) (evaluating whether defendant was transacting business "during the period covered by the institution of the suit and the times of serving process").

company's presence in Texas appears to be both recent and ephemeral-its office is apparently the office of its Texas litigation counsel, and it appears not to have any employees in Texas." *In re Apple Inc.*, 374 Fed. Appx. 997, 999 (Fed. Cir. 2010).  Not much has changed since that Order was issued.  The address that Personal Audio has repeatedly asserted is its "principal place of business" in Texas is nothing but a rented mailbox and there are not and have never been any Personal Audio employees working at that location. *See* Skaggs Decl. at ¶¶ 3-4, Exs. A-C.

In the last few months, Personal Audio has apparently acquired two Texas-based employees.  Mr. Liddle began working for Personal Audio in April 2013.  Davis Decl., Ex. P. Personal Audio does not indicate when Ms. Sullivan came into its employ, but Mr. Liddle submitted a Declaration just nine days before this action was filed in which he stated that he was the only permanent employee of Personal Audio.  Davis Decl., Ex. V at ¶ 3.   The earliest Personal Audio press release on which Ms. Sullivan is identified as a contact person was not issued until September 12, 2013, after this suit was filed.  Therefore, it appears very likely that this employee of Personal Audio was added only after this suit was filed.

Personal Audio's business has been operated in Massachusetts and as a result it has had continuous and systematic contacts with this forum.  Such activities within the state are more than sufficient to render a defendant subject to the general jurisdiction of this Court and, therefore, Personal Audio's motion to dismiss should be denied.

**III.    Personal Audio is Also Subject to Specific Jurisdiction in Massachusetts in this Action.**

**A.    The Massachusetts Long Arm Statute Allows for Specific Jurisdiction Because this Action Arises From or is Related to Personal Audio's Massachusetts Activities Relating to Patent Enforcement**

The first step in the specific jurisdiction analysis is determining whether service is proper under the Massachusetts long-arm statute. *See Nuance*, 626 F.3d at 1230.  Under that statute,

14

service is proper if the cause of action either "arises from, or relates to," the activities of the defendant in the forum state.  *See id.* at 1231; *see also* Mass. Gen. Laws ch. 223A, § 3.  In a declaratory judgment case, the claim "arises out of or relates to the activities of the defendant patentee in enforcing the patents or patents in suit."  *Avocent*, 552 F.3d at 1332.  "Because declaratory judgment actions raise non-infringement, invalidity and/or unenforceability issues central to enforcement of the patents in question, [the Federal Circuit has] looked beyond the 'arises out of' inquiry and have found jurisdiction where such 'other activities' in some identifiable way 'relate to' the enforcement of the patents in the forum."  *Id.*  For example, the Federal Circuit has found specific jurisdiction based on the defendant having a relationship with an exclusive licensee doing business in the forum state.  *See Breckenridge*, 444 F.3d at 1366; *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458-459 (Fed. Cir. 1997); *Avocent, Ltd.*, 552 F.2d 1324, 1334 (Fed. Cir. 2008).  Other examples identified of these "other activities" include "initiating judicial or extrajudicial patent enforcement within the forum."  *Avocent,* 552 F.3d at 1334-335.  The critical issue is whether the facts taken as a whole show that the defendant has deliberately engaged in activities contacting the forum state.  As the Federal Circuit explains:

> Where the defendant deliberately has engaged in significant activities within a State . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Nuance,* 626 F.3d at 1232-233 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)).

Here, Mr. Baker's enforcement activities in Massachusetts constitute initiating patent enforcement within the forum.  As explained in the Complaint at ¶ 26, Personal Audio filed suit

against NBC and CBS for infringement of the '504 patent, after having sent those companies

letters in January 2013.   The letters to both CBS and NBC were sent by Mr. Baker on behalf of

Personal Audio in his role as Vice President of Licensing.  Davis Decl. at ¶¶ 2-3.  Thus, the

enforcement action cited in the Complaint in this litigation for a declaratory judgment was

initiated by Personal Audio's activities <u>in Massachusetts</u>.

Mr. Baker has also engaged in other activities that relate to Fox's declaratory judgment

claims.  Specifically, he made numerous specific public statements relating to the enforcement of

Personal Audio patents, and in particular to the enforcement of this particular patent against the

broadcast television networks.  In a May 31, 2013 article, for example, Mr. Baker (identified as

Personal Audio's vice president of licensing) is quoted as stating "I am confident that we have a

valid patent," and criticizing the Electronic Frontier Foundation specifically for "working to

protect" NBC and CBS against claims that they had infringed the '504 patent.  Davis Decl., Ex.

K.  This type of public statement about the validity and scope of the '504 patent, particularly as

applied to the activities of broadcast networks, is part and parcel of Personal Audio's efforts to

enforce its patent against companies like Fox.  *See, e.g., Avocent*, 552 F.3d at 1334 ("[W]e have

consistently required the defendant to have engaged in 'other activities' that relate to the

*enforcement* or the *defense of the validity* of the relevant patents.").  Personal Audio's own

website provides visitors with a link to this article.  *Id*. at Ex. K.

Because Personal Audio's activities in Massachusetts relate to and are cited in Fox's

declaratory judgment Complaint, service under the Massachusetts long-arm statute is proper.

**B.     Due Process Considerations Do Not Bar Jurisdiction in this Forum.**

The test for determining if specific jurisdiction exists considers:  "(1) whether the

defendant purposefully directed its activities at residents of the forum; (2) whether the claim

arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is

reasonable and fair." *3D Systems*, 160 F.3d at 1378 (citing *Akro*, 45 F.3d at 1545-546). The first

two prongs of this analysis are addressed by the application of the Massachusetts long-arm

statute above:  Personal Audio purposefully conducted activities in Massachusetts which are

related to Fox's declaratory judgment claim.  The sole remaining issue is whether assertion of

jurisdiction over Personal Audio in this matter would be reasonable and fair from a constitutional

perspective.  With respect to that third prong "the burden of proof is on the defendant, which

must present a compelling case that the presence of some other considerations would render

jurisdiction unreasonable." *Avocent*, 552 F.3d at 1332 (quoting *Breckenridge*, 444 F.3d at 1363).

This factor "applies only sparingly." *Nuance*, 626 F.3d at 1231.  As the Federal Circuit has

explained, "defeats of otherwise constitutional personal jurisdiction 'are limited to the rare

situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the

forum are so attenuated that they are clearly outweighed by the burden of subjecting the

defendant to litigation within the forum.'" *Id.* (quoting *Akro*, 45 F.3d at 1549).

Personal Audio has made no such compelling case.  First, although Personal Audio

agrees that for due process purposes, the principal inquiry is whether the defendant has

purposefully availed itself of the privilege of conducting activities within the forum state, it

contends that the activities of Mr. Baker did not constitute purposeful availment of the forum of

Massachusetts apparently because he uses a "Texas" phone number and does not offer to meet

licensees in Massachusetts. *See* Mem. at 5.  It cannot be – and Personal Audio cites no cases

suggesting it is – that a company can hire someone located in Massachusetts to conduct most or

all of its business there but avoid jurisdiction because it uses an out-of-state phone number to

conduct that business.

Personal Audio asserts that it would be unreasonable for this Court to assert jurisdiction over it but fails to identify any specific, substantial harm that it would suffer as a result of litigating in Massachusetts.  Indeed, it is hard to imagine how it could do so given that the inventors and Personal Audio's own witnesses would find Massachusetts a more convenient forum than Texas.  Instead, Personal Audio asserts that it would be unfair to require it to litigate in this forum simply because there are other pending actions in the Eastern District of Texas relating to the same patent.  *See* Mem. at 8.  Personal Audio cites no cases at all in which a court has declined to assert jurisdiction over an otherwise proper defendant under this third prong of the due process analysis based solely on the pendency of related cases in other fora and the potential inconvenience of multiple jurisdictions having related cases.

Moreover, even some of the statements asserting this inconvenience are factually inaccurate.  Personal Audio incorrectly suggests that the other litigation has been pending "for some time."  Mem. at 9.  Personal Audio's suit against Fox in the Eastern District of Texas was filed only <u>after</u> this suit was filed and is not in any way ahead of this action.  Personal Audio's supposed interest in all of these cases being litigated together (even if that could ever be a basis for declining to exercise jurisdiction) is belied by its own actions.  Personal Audio contacted Fox for the very first time only many months after contacting NBC and CBS and after it filed suit against them.  Given the substantial differences in timing of the cases filed in the Eastern District of Texas in January and April 2013 and this case, those cases would be separately litigated in any event.

Nothing in Personal Audio's memorandum could constitute a "compelling case" that it should not be subjected to the jurisdiction of this forum.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs, Fox Broadcasting Company and Fox Networks Group, Inc., respectfully request a hearing on this motion.

## CONCLUSION

For the foregoing reasons, Defendant Personal Audio's motion to dismiss for lack of personal jurisdiction should be denied.

Respectfully submitted,

FOX BROADCASTING COMPANY and
FOX NETWORKS GROUP, INC.

By their attorneys,

/s/ Theodore J. Folkman
Theodore J. Folkman (BBO No. 647642)
Peter C. Obersheimer (BBO No. 680187)
MURPHY & KING, P.C.
One Beacon St.
Boston, Mass. 02108
 (617) 423-0400
tjf@murphyking.com

Steven Lieberman (pro hac vice)
Sharon L. Davis (pro hac vice)
Brian S. Rosenbloom (pro hac vice)
ROTHWELL, FIGG, ERNST &
MANBECK, PC
607 14th Street, N.W., Suite 800
Washington, DC 20005
(202) 783-6040

## CERTIFICATE OF SERVICE

I, Theodore J. Folkman, hereby certify that I have this 27th day of September, 2013, filed this document through the ECF system, to be served electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Theodore J. Folkman

Theodore J. Folkman